## Case No. 17,793.

### WILSON v. BOYCE.

[2 Dill. 539.][1]

Circuit Court, E. D. Missouri.   1873.[2]

LIEN OF THE STATE OF MISSOURI UPON THE RAILROADS FOR STATE BONDS—LEGISLATION OF THE STATE CONSTRUED.

1. Under the act of the Missouri legislature of March 3d, 1857, bonds issued by the state to the several railroad companies receiving them "constituted a first lien or mortgage upon the road and property" of said companies. *Held*, that the lien of the state under this statutory mortgage extended to lands which had before that time been granted by congress to aid in the construction of the road, and by the state to the railroad company, and that the lien of the state was not confined to the road and such property immediately connected with the road as was necessary for its operation.

2. A title to such lands derived from the state (which subsequently foreclosed its lien) is superior to a title derived from the railroad company, by deed made by the company, after it had accepted the provisions of the act of March 3d, 1857, giving the state a first lien on the "road and property" of the company.

This is an action of ejectment for a tract of land in Scott county, in this state. The tract in dispute is part of a large body of land acquired by the state of Missouri under the act of congress, entitled "An act granting the

[1] [Reported by Hon. John McLean, Circuit Justice.]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
[2] [Affirmed in 92 U. S. 320.]

right of way, and making a grant of land to the states of Arkansas and Missouri to aid in the construction of a railroad from a point on the Mississippi, opposite the mouth of the Ohio river, via Little Rock, to the Texas boundary, near Fulton, in Arkansas, with branches to Fort Smith and the Mississippi river," approved February 9th, 1853 (Railroad Laws, p. 5). The lands thus granted by the act of congress were afterwards granted by the state to the Cairo & Fulton Railroad Company of Missouri, by act of the general assembly of February 20th, 1855. The plaintiff [Blakely Wilson] and defendant [Peter Boyce] each claims under the Cairo & Fulton Railroad Company of Missouri as a common source of title. The plaintiff claims to have derived the title of the Cairo & Fulton Railroad Company of Missouri by means of the following instruments: —(1) A deed from the Cairo & Fulton Railroad Company, of date May 23d, 1857, to John Moore, John Wilson, and Albert G. Waterman, in trust, with power of sale. [This paper bears date May 23d, 1857, though the resolution of the board, which is the authority on which it rests, was made March 8th, 1858, and the certificates of acknowledgement are dated respectively April 30th, May 7th, and 14th, 1858, so that for some reason the document was given a false date.] (2) An instrument purporting to be a deed from Moore, Wilson, and Waterman, trustees, of date November 25th, 1859, to one H. S. Hamilton. (3) A deed bearing date March 29th, 1860, from H. S. Hamilton to Walter A. Stevens. (4) A deed of date November 23d, 1860, from Walter A. Stevens to Blakely Wilson, the plaintiff. The defendant, who is tenant in possession, claims that Thomas Allen, his landlord, has derived the title of the Cairo & Fulton Railroad Company of Missouri by means of two certain statutory mortgages put upon its property by the railroad company, and by the proceedings that were subsequently had for the foreclosure of said mortgages.

The first of the two mortgages was created under the act of the general assembly, entitled "An act to expedite the construction of the Cairo & Fulton Railroad of Missouri," passed December 11th, 1855. The first section of the act made provision for the issuing of the bonds of the state, and the delivery of them to the railroad company, to aid the company in the building of its road. The second section forbade the delivery of the state bonds to the company until the acceptance thereof should be signified to the secretary of state by a certificate of the company filed in the secretary's office. The third section provides that "each certificate of acceptance so executed and filed as aforesaid, shall be recorded in the office of the secretary of state, and shall thereupon become and be, according to all intents and purposes, a mortgage of the road, and every part and section thereof, and its appurtenances to the people of this state, for securing the payment of the principal and interest of the sums of money for which such

bonds shall from time to time be issued and accepted as aforesaid." State bonds, amounting to $250,000, were delivered to the railroad company under this act after March 3d, 1857. The second of the two mortgages arose under the act of the 3d day of March, 1857, entitled "An act to amend an act to secure the completion of certain railroads in this state, and for other purposes," approved December 10th, 1855. By the 20th section of the act there was "granted to the Cairo & Fulton Railroad Company an additional loan of $400,000." By the 17th section it was provided that "all bonds issued under the provisions of this act shall constitute a first lien or mortgage upon the road and property of the several companies so receiving them, in the same manner as provided by the act approved February 22d, 1851, to expedite the construction of the Pacific Railroad, and of the Hannibal & St. Joseph Railroad, and the act approved December 10th, 1855, of which this is amendatory." On the 19th day of October, 1857, the board of directors adopted a resolution accepting the provisions of the act of the 3d day of March, 1857, as required by the 16th section of the act and afterwards, in due time filed a copy of it in the secretary's office, and thereupon the amount of bonds granted by the act were issued and delivered to the railroad company, and the company in due form filed in the secretary of state's office the certificates of acceptance required by the 4th section of the act of February 22d, 1851. The railroad company having made default in the payment of the interest on these bonds, and remaining in default for a number of years, the general assembly passed the act of the 19th day of February, 1866, called the "Sell-Out Law" (Laws of Adjourned Session of 1866, p. 108), by which provision was made for the foreclosure of the mortgages and for the sale of the mortgaged property. Pursuant to the provisions of the act just cited, a sale of everything that belonged to the railroad company in foreclosure of these mortgages was made, at which the state became the purchaser, and the state thereupon re-sold to McKay, Reed, Vogel, and Simmons, who afterwards sold and conveyed to Allen, the defendant's landlord. The plaintiff's counsel, in the progress of the trial, conceded that if the state's mortgages covered the property in dispute, the defendant's landlord had, by means of the proceedings shown in evidence, acquired a good title.

Mr. Clover, for plaintiff.
Dryden & Dryden, for defendant.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. This is an action of ejectment. The parties have stipulated that the title to the land in controversy was at one time in the Cairo & Fulton Railroad Company, and it is under the company that each party claims to derive title—the plaintiff under a deed made by the trustees of the

company, November 25th, 1859, to one Hamilton; the defendant under an alleged first mortgage lien in favor of the state of Missouri and its subsequent foreclosure, and the sale of the land by the state to the grantors of the defendant's landlord.

It was admitted on the trial by the learned counsel for the plaintiff, that if the state had a lien upon this land by virtue of the statutory mortgages in its favor, created either by the act of December 11th, 1855, or the amendatory act of March 3d, 1857, the title was subsequently acquired under a foreclosure of its lien by the state, and by it conveyed to the grantors of the landlord of the defendant. One question, if decided in favor of the defendant, as we think it must be, is decisive of the case, and that is: Did the lien or mortgage in favor of the state under the act of 1855, or 1857, embrace or extend to the lands of the company which were granted by congress to the state, and by the state to the company, to aid in the construction of its road?

The point of the controversy is just here: The plaintiff admits that the state had, by virtue of these acts, a first lien upon the road and all the lands necessary to its use and operation as a railroad, but denies that this lien extended to the lands of the company, which had been granted to it by congress to aid, by a mortgage or sale thereof, in the construction of its road. On the other hand, the defendant contends that to secure the state for the bonds issued to the company under the acts named, the state stipulated for, and the company consented to give, a first lien, not only upon the road and its appurtenances, but as well upon the other property of the company, including its lands.

By the act of December 11th, 1855, when accepted by the company as it was, there was created a first mortgage in favor of the state upon "the road and every part and section thereof, and its appurtenances." But, by the amendatory act of March 3d, 1857, the language was changed, and it was provided that "all bonds issued under the provisions of this act shall constitute a first lien or mortgage upon the road and property of the several companies so receiving them, in the same manner as provided by the act approved February 25th, 1851, to expedite the construction of the Pacific Railroad, and the Hannibal & St. Joseph Railroad, and the act approved December 10th, 1855, of which this is amendatory."

All of the state bonds to the Cairo & Fulton Railroad Company were issued after the act of 1857 was passed and its provisions had been accepted by the company; and the act was accepted by the company prior to the time when it authorized the execution of the conveyance of its lands in trust to Moore, Wilson, and Waterman. Indeed, the conveyance to these trustees in terms refers to the acts of 1853 and 1857, and recognizes the priority of the state to the extent provided for

in these acts; but in reciting that upon which the lien of the state attached, the language of the act of 1855 is followed, and the word "property," used in the act of 1857, omitted, apparently ex industria.

It is unnecessary to consider whether the lien provided for in the act of 1853 upon "the road and every part and section thereof, and its appurtenances," extended to the lands which had been granted by congress, because the state was equally entitled to the security provided for in the act of 1857, which was "a first lien or mortgage upon the road and property of the company."

This legislation has been construed by the supreme court of Missouri. Whitehead v. Vineyard, 50 Mo. 30. In the case just cited that court decided that, by the act of 1857, the state's lien extended to "all the corporate property of the companies named in the act," to lands as well as to the road proper, and even to lands subsequently acquired by the companies, as well as to those owned by them when the act was passed. We do not stop to inquire whether the nature of the case is such (the state having been a party in interest) that the construction of the state legislation by the highest tribunal of the state should not conclude us; for it will be admitted that a different judgment is not to be here pronounced, resulting in disturbing or overturning titles held good in the state tribunals, unless the opinion of the state supreme court is clearly erroneous.

Upon the best consideration we have been able to give to the subject, we concur in the opinion that by the act of 1857, however it would have been under the act of 1855, the lien of the state extended to the lands as well as to the road proper and its appurtenances.

We mention briefly the reasons that give support to this conclusion:—

1. The anxiety of the state to have full security is manifest on the face of all the enactments relating to the subject, and hence the provision for a first lien or mortgage, which was not only to be upon the road, but upon the property of the company.

2. The terms "road and property" are general and comprehensive, and as the word "property" was specially inserted in the latter enactment, it must be supposed, particularly in legislation of such great moment, that it was advisedly done either to close doubts, or to extend the lien to property which would not be embraced by the words "road and its appurtenances." The lien extends not only to the road, but in addition to the property of the company—to property which would not or might not be embraced by the language "road and appurtenances." What property was meant? What so likely as the lands of the struggling companies, which, without the aid of the state by bonds, were unable to go on with their enterprises, and what more appropriately than lands falls within the comprehensive term property?

30 FED. CAS.—8

3. If the lands of the company be excluded from the mortgage, it is difficult to give a construction to the act which will give any adequate or considerable significance to the word property.

The plaintiff's counsel argues that the act of 1857 "gave the state a mortgage upon nothing other than the road and property of the company held for the purpose of the road," and he adds: "The term property can be well satisfied without giving it the interpretation of including all the land granted the road, not for its purposes of a railroad corporation, but in aid of the construction of the road. The term property is evidently meant to include, and to include nothing more, than the road-bed, rails upon it, turn-outs, depots, erections, buildings, franchises, locomotives, passenger and freight cars, hand cars, tenders, tools, machinery, materials, etc. and all property as part and necessary part of the entire establishment, movable or immovable, essential to the production of tolls and revenue."

But would not all this, or substantially all this, unless it be the franchise of being a corporation, be covered by a mortgage upon the road of the company, or the road and its appurtenances?

Under this view the defendant's landlord has the title, and this makes it unnecessary to determine whether the plaintiff would also fail for the reason that the deed to Hamilton was never executed or delivered by the trustees so as to be operative as a conveyance of the lands described therein.

Judgment for the defendant.

NOTE. A special finding of facts was made, and the case taken to the supreme court, [where the above judgment was affirmed. 92 U. S. 320]. Further, as to legislation of the state of Missouri in aid of railways, and the rights of the grantees of the state, see Murdock v. Woodson [Case No. 9,942].